(62 App. Div. 558.)

### VINCENT v. ALDEN.

(Supreme Court, Appellate Division, Third Department. June 28, 1901.)

1. INJURY TO SERVANT—NEGLIGENCE OF MASTER—SUFFICIENCY OF EVIDENCE.
   A servant was injured while assisting to unload an 8-ton girder, by the breaking of a chain. The work was in charge of defendant's superintendent, and there was no evidence that the master furnished chains other than the one which broke. There was evidence that the superintendent borrowed the chain which broke, but was warned that it was not a good chain by the borrower and by certain workmen. The chain was a half-inch chain, and would have been capable of safely supporting a load of only $1\frac{3}{4}$ tons, if new; but it was old, and some of the links were reduced one-third. *Held* sufficient evidence of defendant's negligence to go to the jury.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**

The servant was injured while using a crowbar to keep the girder from catching on another girder, and the master contended that the injury would not have occurred if the servant had let the upper end of the bar rest on the suspended girder, instead of holding it in his hand; but there was no evidence that such a course was usual, or more safe than that pursued by the servant. There was no evidence that the servant had any knowledge as to the condition of the chain. *Held* not sufficient, as a matter of law, to show that the servant was guilty of contributory negligence.

Appeal from trial term, Clinton county.

Action by Thomas Vincent against John F. Alden for injuries received while in the employ of defendant. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Appeal from a judgment in favor of the defendant, John F. Alden, against the plaintiff, Thomas Vincent, dated November 26, 1900, and entered in the office of the clerk of the county of Clinton on the 26th day of November, 1900, upon the dismissal of the complaint, by direction of the court, after a trial before the court and a jury at the Clinton trial term. The defendant is engaged in designing and building iron and steel bridges. In November, 1897, he was about to erect a bridge over the Big Chazy river, at Perry's Mills, N. Y. On the morning of the 21st of November, 1897, he commenced the work of unloading iron girders for said bridge from platform cars standing on the track of the Ogdensburgh & Lake Champlain Railroad over said river. The defendant was not personally present at the work, but the same was in charge of one Merrill, his superintendent. The girders were about 54 feet long by 5 feet 3 inches wide, and each weighed a little over 8 tons. The three girders that were being unloaded were placed one upon the other, extending over two platform cars. Shoe plates were attached to the girders, and extended about four inches beyond the face of the girders for a short distance from the end on each side. The cars were standing east and west, and the girders were being unloaded from the north side of said cars. The first girder resting upon the cars had the shoe plate to the north; the second girder had the shoe plate to the south. The girders were unloaded by putting a chain around each end of the same, and connecting said chains with tackle to the south of the car. Iron rails were placed in the stake holes of the cars, and extended down to the ground. The girders were pushed over the side of the cars, so that the north side thereof would rest upon rails, and the inner or south side was lifted and held by the chains and said tackle, and in that way the girders were lowered and entirely removed from the cars. The top or third girder was unloaded without accident. They commenced to unload the second girder, and the shoe plate of the girder that was being removed was about to catch on the shoe plate of the girder under it, when the superintendent sent the plaintiff, with a bar, to the west end of the girder, and told him to watch that the shoe did not catch on the angle of the girder. The plaintiff put one end of the bar on the shoe of the lower girder, and held the other end of the bar in his hand for the purpose of easing the girder that was being removed over the shoe of the lower girder, and prevent it from catching thereon. While standing in this position, the chain on the west end of the girder broke, and the girder fell upon the bar, and it dropped from his hand upon his foot. The girder was then about three-quarters of the way over the side of the car, and it slid, and so caught upon one end of the bar as to cause the bar to fly up, striking the plaintiff in the face, and the injuries complained of were thus inflicted. This action was brought by the plaintiff, and tried at a Clinton trial term in December, 1898, and resulted in a verdict of $900 for the plaintiff. The judgment entered upon such verdict was reversed by this court, and the opinion will be found in 45 App. Div. 627, 61 N. Y. Supp. 62. The action was again tried at the Clinton trial term in November, 1900. and at the close of the plaintiff's evidence defendant's motion for a nonsuit was granted.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

L. L. Shedden, for appellant.

T. B. Cotter, for respondent.

CHASE, J. The record in the case now before us is entirely different from the record before this court on the former appeal. The motion for a nonsuit was granted at the close of the plaintiff's testimony, and the evidence of the defendant's witnesses referred to in the opinion on the first appeal herein is not in this record, and the plaintiff denies that he testified on the former trial as follows: "If I had placed the crowbar one end on that shoe and the other end on the girder in the proper position, and held it, the shoe would not have caught, and the girder would have slipped off. That was what I intended to do." And there is no evidence to show that he did so testify. There is no evidence now before us to show that the defendant furnished chains and appliances for the removal of the girders other than those that were used by his superintendent. The plaintiff produced as a witness one Crippen, who testified without contradiction as follows:

"I know Mr. Merrill, the superintendent of the defendant. He came to the car on the side track about half past eight or nine o'clock, and I at that time loaned him a chain. He said he was short a chain or so. He said they must have been stolen or lost on the way; that he would have to have a chain to unload those girders; and I loaned him a chain. I told him I could lend him a chain, but I did not consider it a good one. It was one we found on the dock at Rouse's Point. He did not take it the first time he talked with me. He went away, and said, if it was not a good chain, he did not want to use it; and then he came back, and said he would have to use it; he had no other. It was an old chain. The chain was never returned to me."

A safe load for a half-inch chain is shown to be 1¾ tons. The chain so borrowed was a half-inch chain, and it had been worn so that some of the links were reduced one-third. It was used in the removal of the first girder, and is the chain that was broken at the time of the accident. One of the defendant's employés, a witness herein, says that he thought that the chain would not hold the girder, and so stated to another employé, who called the superintendent's attention to it, and told the superintendent that he had better put a rope on the girder. A rope was put on the girder that was first unloaded, but it was so cut in going over the edge of the girder that it could not be used again. When they started to remove the second girder, the old chain was put around the west end of such girder, instead of the east end of the girder, as had been done in the removal of the first girder. At the time of the accident there were a few short pieces of chain about the cars. There is no evidence in the record to show that such chains were sufficient, if connected, to encircle the girder, and no evidence to show that there were appliances for the purpose of connecting such chains if their combined length had been sufficient to encircle the girder. The pieces of the rope that were cut in removing the first girder were not long enough to be used for the second girder, and the other pieces of rope supplied by the defendant were used in connection with the tackle. There is some evidence that there was a

coil of rope in a box on a car on the side track. Even if such rope had been furnished by the defendant, the evidence is to the effect that, if used, the same would have been cut by grinding against the edge of the girders. According to the plaintiff's evidence, as it appears from this record, he went to the west end of the girder in obedience to the instructions of the superintendent, and proceeded to perform the work he was assigned to do; and the suggestion that the plaintiff should have put one end of his bar upon the shoe of the lower girder, and let the other end rest upon the girder itself, and there held it, instead of holding one end suspended in his hand, is not accompanied by any evidence whatever that such a course would have been the proper or ordinary course, or was more safe for the plaintiff than the course he did pursue. There is no evidence that the plaintiff examined the chains or ropes, or had any knowledge in regard to them, or as to the safety of any of the appliances used in removing the girders. A mere statement of the facts as shown in the present record is sufficient, without argument, to show that the question of plaintiff's contributory negligence, as well as the question of the defendant's negligence, were questions of fact that should have been submitted to the jury. The arguments of the defendant before us are very largely based upon statements that do not now appear in the record.

Judgment reversed on the law and facts, and new trial granted, with costs to appellant to abide the event. All concur.